**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JORGE RAMIREZ MORE,<br>Petitioner<br>v.<br>TODD BLANCHE,[1] et al.,<br>Respondents | Case No.: 2:26-cv-01921-APG-MDC<br>**Order Granting in Part First Amended Petition for Habeas Corpus and Denying as Moot Motion for Temporary Restraining Order**<br>[ECF Nos. 7, 8] |

Petitioner Jorge Ramirez More is a citizen of Cuba. ECF No. 7 at 2. In 1967, when he was 7 years old, Ramirez More was paroled into the United States, and his status was adjusted to lawful permanent resident. ECF No. 7-2 at 2. Almost 20 years later, in 1985, he pleaded guilty to battery with intent to commit a crime, sexual assault, robbery, and burglary, and was sentenced to life imprisonment with the possibility of parole after five years. *Id.* at 3; 12-1 at 13. A Notice to Appear was served by certified mail in 1998, and Ramirez More was allowed to remain on supervision after he was paroled in 2019. ECF No. 7-2. On September 22, 1999, by Order of the Immigration Judge, Ramirez More was ordered removed to Cuba based on an aggravated felony, and the application to withhold removal or defer removal was denied. ECF No. 7-3. The Board of Immigration Appeals dismissed the appeal. ECF No. 12-1 at 13-16.

On June 9, 2026, Ramirez More encountered immigration officers at the Nevada Parole and Probation Office. He was determined to be in violation of immigration law and transported to Washoe County Jail. Ramirez More refused to sign the Form I-205 Warrant of Removal/Deportation signed by a Field Office Director, the Form I-294 Warning that he was

[1] Under Federal Rule of Civil Procedure 25(d), Attorney General Todd Blanche is substituted for Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted for Kristi Noem.

prohibited from being in or remaining in the United States, and the Notice of Removal to Mexico, all dated June 10, 2026. ECF No. 12-1 at 3, 5-12.

Ramirez More raises four grounds in his petition. First, that the Form I-205 Warrant was not issued before his arrest and that a determination was not made that his detention was governed by 8 U.S.C. § 1231(a)(6) before the prolonged detention. Second, that his continued detention violates due process because his removal was not reasonably foreseeable and is prolonged under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Third, that his removal to a third country, Mexico, is unlawful. Fourth, he believes that his supervision was unlawfully revoked.

The government responds that I lack jurisdiction over the petition under 8 U.S.C. § 1252(b)(9) and (g). Alternatively, it argues that Ramirez More's detention is mandatory for the first 90 days under § 1231(a), presumptively reasonable for six months under *Zadvydas*, and properly extended if the noncitizen fails or refuses to apply in good faith for travel documents. The government argues that at the time Ramirez More filed his petition, he was still within the 90-day removal period, so his detention was mandatory. And it asserts that he could have been released from custody if he had cooperated with the effort to remove him to Mexico. It notes that he has not expressed a fear of removal to Mexico.

Ramirez More replies that the jurisdiction argument is meritless and has "routinely" been rejected, citing *Perez Canet v. Blanche*, No. 2:26-cv-002230APG-NJK, 2026 WL 1091763 (D. Nev. Apr. 22, 2026). Ramirez More contends that he is well outside the removal period because the removal order was issued in 1999, the Board of Immigration Appeals dismissed the appeal in 2000, and the 90 days started to run in October 2019, when he was released from state incarceration on parole. Ramirez More asserts that the government has not demonstrated how he failed to comply with his removal or substantiated how he thwarted his own removal. Ramirez

More notes that the government failed to address the timing of the warrant or the insufficient Section 1231(a)(6) determination arguments, or the unlawful revocation of his supervision.

I grant Ramirez More's petition for habeas corpus and order that he be released from custody on appropriate conditions of release. I deny his motion for a temporary restraining order as moot.

**I. DISCUSSION**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas*, 533 U.S. at 687; *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**A. I have jurisdiction over Ramirez More's petition.**

The Ninth Circuit has concluded that § 1252(g) and (b)(9) do not strip courts of jurisdiction if a petitioner "objects to the lack of process afforded him in connection with having been sent to a country not designated in the [immigration judge's] removal order, despite his vehement and repeated objections that he feared being sent there." *Ibarra-Perez v. United States*,

154 F.4th 989, 1000 (9th Cir. 2025). The Ninth Circuit reasoned that § 1252(g) did not bar review because the petitioner did "not challenge ICE's discretionary authority to decide 'when' or 'whether' to execute a removal order." *Id.* at 997. It also concluded that "§ 1252(b)(9) does not apply because [the petitioner] brings claims that arose after completion of his removal proceedings." *Id.*

Ramirez More does not seek review of his removal order. Rather, he asserts that his continued detention is unconstitutional and ICE's efforts to remove him to a third country once his removal proceedings are complete is unlawful. I therefore have jurisdiction to consider his claims. *See Alkarori v. Nevada S. Det. Ctr.*, No. 2:25-CV-02567-MMD-MDC, 2026 WL 266756, at *1 (D. Nev. Feb. 2, 2026). *See also Rodriguez v. Mullin*, No. 2:26-cv-00531-APG-NJK, 2026 WL 895685, at *2 (D. Nev. Apr. 1, 2026) (rejecting similar jurisdictional arguments under §§ 1252(g) and (b)(9) in the context of detention under § 1226).

**B. Ramirez More was arrested before the warrant issued and his prolonged detention does not meet the requirements of 8 U.S.C. § 1231(a)(6).**

An alien may be arrested and detained pending a decision on removal upon issuance of a warrant issued by the Attorney General. 8 U.S.C. § 1226(a). Section 1226 applies to aliens already present in the United States and "creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 necessarily requires the warrant to issue *before* the arrest because it is not a crime for a removable alien to remain present in the United States and the Notice to Appear does not authorize an arrest. *Arizona v. United States*, 567 U.S. 387, 407 (2012) (citation omitted).

The "arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States," and the warrant is required unless "the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(i), (ii). "The phrase 'has reason to believe' has been equated with the constitutional requirement of probable cause." *Tejeda-Mata v. Immigr. & Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980) (collecting cases). A Form I-205 Warrant of Removal may issue "based on the final administrative removal order" when issued by certain designated officials, including a field office director. 8 C.F.R. § 241.2(a). Ramirez More argues that because the Warrant is post-dated after the arrest date it is void so the arrest and detention were not conducted based on a warrant. The government failed to respond to this issue.

Fourth Amendment principles apply in the civil immigration context, and the detention of an alien must be based on consent or probable cause that the person is in fact an alien. *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 824 (9th Cir. 2020). While an immigration officer has the power to arrest an alien without a warrant "if he has reason to believe that the alien . . . is likely to escape before a warrant can be obtained for his arrest," the alien arrested must be "taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." 8 U.S.C. § 1357(a).

Ramirez More was served with a copy of the warrant and other documents *after* he was arrested and while he was under restrictions imposed by his state probation. Even if I treated this as a warrantless arrest, the government has advanced no argument that Ramirez More was likely

to escape before a warrant could be issued or that he was promptly provided a probable cause determination. The arrest was not made pursuant to a warrant and therefore the subsequent detention was unjustified.

A secondary issue raised is that the government failed to produce any documents to support the finding that Ramirez More met the criteria for continued detention. An alien that is ordered removed and who: (1) is inadmissible based on the conviction of certain crimes (8 U.S.C. § 1182(a)(2)(B)); or (2) is removable because of the inadmissibility, criminal convictions, or security grounds (8 U.S.C. § 1227(a)(1), (2), (4)); or (3) who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period, and if released, be subject to terms of supervision. 8 U.S.C. § 1231(a)(6). However, "even where prolonged detention is permissible, due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (cleaned up).

Again, the government did not respond to this issue or demonstrate how Ramirez More is unlikely to comply with the removal order or poses a risk to the community. More's continued detention without anything to support it is unlawful and violates due process.

**C. Ramirez More's removal is not reasonably foreseeable and violates due process.**

When an alien is ordered removed, the Attorney General has 90 days to remove the alien from the United States. 8 U.S.C. § 1231(a)(1)(A). The "removal period" in this case began on the date when the order became administratively final: after the Board of Immigration Appeals dismissed the appeal on April 10, 2000. 8 U.S.C. § 1231(a)(1)(B)(i). The Attorney General has discretion to detain noncitizens beyond this 90-day period under 8 U.S.C. § 1231(a)(6).

However, to avoid doubt about the statute's constitutionality, the Supreme Court in *Zadvydas* read into the statute an "implicit limitation" on that discretion because a statute that permitted indefinite detention "would raise a serious constitutional problem" under the Fifth Amendment's due process clause. 533 U.S. at 682, 689-90. The Supreme Court adopted a six-month period as a presumptively reasonable period of detention to effectuate removal. *Id.* at 701. After that six-month period, if a detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

As of the date of its response, the government argues that Ramirez More had only been detained approximately 60 days and had not reached the initial 90-day removal period from the date of the arrest on June 9, 2026. ECF No. 12 at 2, 10. But the six-month period is only a presumption. The noncitizen may rebut the presumption that continued detention is reasonable where there is no significant likelihood of removal in the reasonably foreseeable future. *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395-97 (D.N.J. 2025); *Alkarori*, 2026 WL 266756, at *2-3. If the noncitizen makes this showing, then the government "must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Ramirez More argues that the government remains unable to remove him to Cuba, and therefore removal is not reasonably foreseeable. The government does not dispute this. There is indeed no significant likelihood of removal to Cuba in the reasonably foreseeable future, and any continued detention based on effectuating removal to Cuba violates Ramirez More's due process rights under *Zadvydas*.

/ / / /

/ / / /

**D. The government has not complied with due process to remove Ramirez More to Mexico.**

If the IJ determines the noncitizen may be removed, the IJ also designates to what country or countries the noncitizen may be removed. 8 C.F.R. § 1240.12(d). If the U.S. Department of Homeland Security (DHS) is "unable to remove the alien to the specified or alternative country or countries, the order of the immigration judge does not limit [DHS's authority] to remove the alien to any other country as permitted by [8 U.S.C. § 1231(b)]." *Id.* Removal to a country that is not identified by the immigration judge during the removal proceedings is referred to as a third country removal. Although DHS has authority to effectuate third country removals, a noncitizen may not be removed to a country where his or her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion" (referred to as "withholding of removal"), or where "it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal" (referred to as the Convention Against Torture or CAT). 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16. Under § 1231(b)(2)(E), the Attorney General may effectuate a third country removal to "any of the following countries":

> (i) The country from which the alien was admitted to the United States.
> (ii) The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.
> (iii) A country in which the alien resided before the alien entered the country from which the alien entered the United States.
> (iv) The country in which the alien was born.
> (v) The country that had sovereignty over the alien's birthplace when the alien was born.
> (vi) The country in which the alien's birthplace is located when the alien is ordered removed.
> (vii) If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

The government does not state how Mexico falls into one of these options other than possibly the last one because Cuba will not accept Ramirez More. Instead, the government simply takes the position that there is a significant likelihood of removal to Mexico but Ramirez More's own refusal to comply with removal has prevented his release from custody.[2] No specifics are provided other than he has "not expressed a fear of persecution if removed to Mexico" so therefore he has no claim. ECF No. 12 at 10.

I agree with other courts that the government must comply with the due process requirements of notice and a reasonable opportunity to be heard before a third country removal can be effectuated. *See, e.g.*, *Arreaza Sanchez v. Janecka*, No. 5:26-CV-04638-KES, 2026 WL 3122453, at *7 (C.D. Cal. Oct. 19, 2026) (collecting cases); *L.R. v. Noem*, 826 F. Supp. 3d 1252, 1271 (D. Nev. 2026); *A.A.M. v. Andrews,* 815 F. Supp. 3d 1124, 1136 (E.D. Cal. 2025). The 90-day removal period for a noncitizen with a final order of removal can be extended if the noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). However, the government has not presented evidence that Mexico will accept Ramirez More, or that it has taken steps to effectuate his travel to Mexico. The government may be able to cure the due process violation, but currently there is no evidence before me that it has taken any steps to do so. Thus, there is no significant likelihood of removal to a third country in the reasonably foreseeable future.

[2] As part of a supplemental filing, Ramirez More provided a copy of a Notice of Failure to Comply Pursuant to 8 CFR 241.4(g) dated August 28, 2026, that Ramirez More refused to sign. ECF No. 14-1 at 6.

**E. Revocation of the Order of Supervision also violated due process.**

As a preliminary matter, Ramirez More moved for leave to file supplemental documents. ECF No. 14. The government did not oppose or respond to the motion. I find good cause for the supplemental filing and the documents will be considered.

"Section 241.13 of Title 8 was added to the Code of Federal Regulations after the decision in *Zadvydas* to incorporate the constitutional limitations on detention of noncitizens after the expiration of the 90-day removal period under 8 U.S.C. § 1231(a)." *Pham v. Warden*, 833 F. Supp. 3d 1092, 1103 (E.D. Cal. 2026) (citations omitted). An alien released under an order of supervision who violates any of the conditions of release may be returned to custody, and if appropriate, referred for criminal prosecution. "The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released." 8 C.F.R. § 241.13(i)(1). The alien's release may be revoked, and the alien will be returned to custody if there are "changed circumstances" that make it significantly likely that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Procedures for revocation include an "initial informal interview promptly" after returning to custody and an opportunity to submit evidence to show that "there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).

After Ramirez More was released on parole in Nevada, he was placed under an Order of Supervision on August 9, 2019 because Cuba refused to accept him and the government was unable to remove him to Cuba. A month after his arrest, on July 9, 2026, Ramirez More was issued a Notice of Revocation of Release. ECF No. 14-1. The Notice of Revocation had a box checked saying that circumstances have changed such that there is a significant likelihood of

removal in the reasonably foreseeable future, with nothing more specified. Further, the form states that an informal interview will be provided on July 9, 2026, but counsel has no confirmation that the hearing occurred. The document is signed by "K. Andrus" with the title of "SS DO" with no proof of service. Ramirez More also received another Notice of Removal dated September 9, 2026, regarding the intent to remove him to Mexico. He refused to sign the document.

Ramirez More argues that the government failed to follow procedures, making the revocation and subsequent detention unlawful. The government did not respond to or address this issue. Finding no evidence to the contrary, I agree that the government failed to comply with the procedures set forth in 8 C.F.R. § 241.13(i)(3) before revoking the terms of supervised release.

**F. I grant Ramirez More's petition.**

Arresting Ramirez More before the issuance of the administrative warrant violated his Fourth Amendment rights. Removing him to a third country without adequate notice and an opportunity to be heard clearly violated his Fifth Amendment due process rights. Because there is no significant likelihood of removal to Cuba or any other country in the reasonably foreseeable future, Ramirez More's continued detention violates the statute and due process under *Zadvydas* because "the detention in question exceeds a period reasonably necessary to secure removal." 533 U.S. at 699. I therefore grant all grounds of Ramirez More's petition.

Ramirez More seeks discharge from confinement and reinstatement of the prior order of supervision, a prohibition of a removal to a third country without a notice and hearing, and/or a constitutionally adequate bond hearing. The appropriate remedy is to order his release subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3). Additionally, because the

government must comply with due process before effectuating a third country removal, I grant Ramirez More's request that I prohibit the government from removing him to a third country without providing him and his counsel adequate notice of intent to remove him to a third country and a meaningful opportunity to respond. Finally, I grant his request to prohibit the government from re-detaining him absent (1) proof of changed circumstances making his removal reasonably foreseeable or (2) violation of reasonable terms of supervision.

## II. CONCLUSION

I THEREFORE ORDER that Jorge Ramirez More's first amended petition for habeas corpus **(ECF No. 7) is GRANTED**.

I FURTHER ORDER that Jorge Ramirez More's motion for temporary restraining order **(ECF No. 8) is DENIED as moot.**

I FURTHER ORDER that Jorge Ramirez More's motion for leave to file supplemental documents **(ECF No. 14) is GRANTED *nunc pro tunc*** and the documents were considered.

I FURTHER ORDER that the respondents must release Jorge Ramirez More from the custody of Nevada Southern Detention Center on **Monday October 26, 2026**, and transport him to 501 Las Vegas Blvd South, Las Vegas, Nevada by 5:00 p.m. that same day. The respondents must advise Ramirez More's counsel of the estimated time of release for coordination purposes, at least one hour before he is released. Ramirez More's release is subject to reasonable terms of supervision as set forth in 8 U.S.C. § 1231(a)(3). Determining reasonable terms of supervision must not in any way impede the immediate release of Ramirez More.

I FURTHER ORDER that the respondents are prohibited from removing Jorge Ramirez More to Mexico or any other third country without first providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of

\written notice of the country being designated and the statutory basis for the designation. The notice also must ask Ramirez More whether he fears persecution or harm upon removal to the third country, and his response must be memorialized in a writing signed by him. He also must be afforded a reasonable opportunity to reopen immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge.

I FURTHER ORDER that the respondents are prohibited from re-detaining Jorge Ramirez More absent proof (1) of changed circumstances making his removal reasonably foreseeable and without first following the required statutory procedures, or (2) that he violated a reasonable term of supervision and without first following any required statutory or regulatory procedures.

I FURTHER ORDER the Clerk of Court substitute Attorney General Todd Blanche for respondent Pamela Bondi and Secretary of Homeland Secretary Markwayne Mullin for respondent Kristi Noem and close this case.

DATED this 23rd day of October, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE